# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

RAYMOND BERRY,

               Plaintiff,

v.

TIMBERLINE MOULDING; MARVIN WAIT,
SUSAN WAIT; and Does 1 through 10,
Inclusive,

               Defendants.

CASE NO.: '08 CV 0352 BEN (CAB)

**DECLARATION OF DEFENDANT SUSAN WAIT IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(B)(1) AND 12(B)(6)**

Judge: The Honorable Roger T. Benitez
Complaint Filed: 22 February 2008

I, Susan Wait, do hereby declare as follows:

1.    I am a defendant in the above-encaptioned civil action and have firsthand, personal knowledge of the facts set forth in this declaration, and if called upon to do so, would and could testify competently thereto.

2.    The purpose of this declaration is to provide support for a motion to dismiss with which it is expected to be filed concurrently. My understanding of the motion is that the basis

for the plaintiff's claims in this matter is that he contends that certain changes are or may be needed at the subject property of the lawsuit (i.e., Timberline Moulding, 1315 Armorlite Drive, San Marcos, CA, the "Property") for his return, because of certain physical limitations he has. As I understand it, a Federal court may be required to dismiss an ADA/access lawsuit if there is nothing on a property which needs to be changed for disabled access; I further understand that this is rarely the case with most commercial property, but ask the Court to please consider each of the following reasons why this case should be dismissed for lack of a true, Article III "case or controversy" between the parties:

a. **Overview**: I understand that Philippe Heller has inspected the property and provided a separate declaration in which he concludes that there are no significant impediments to disabled access at the Property [and, by implication, that this Court should dismiss the above-encaptioned civil action]; this is no accident, I am disabled myself (with severe Epilepsy) and have a number of friends and relatives who are confined to wheelchairs. Access for people with disabilities has always been an important priority at Timberline, and countless wheelchair users have come and gone (and more importantly, regularly returned) over the years without a single complaint, at least until this lawsuit was filed. Because the Complaint on file in this matter identifies only 3 areas of concern (and even then, only very vaguely at ¶11), I will respond on each directly:

b. **Cashier counter**: Exhibit "A" shows a slide out customer service counter with an ISA (i.e., International Symbol of Accessibility) on it, and is a fair depiction of

the arrangement which would have existed in October 2007, when Plaintiff claims to have visited.[1] My assumption is that if Plaintiff actually came into our facility, he did not see this counter, even though it was normally kept in the pulled-out position. While I acknowledge that a counter of approximately 36" in width and 24" inches in depth is preferred, it is rare that anyone buying anything at our facility would have to sign more than a credit card slip, so I believe the slide out counter in Exhibit "A" was more than sufficient for Mr. Barry; I assume he (or an investigator) simply saw the higher counter shown in the background and assumed that no provision had been made for wheelchair access. If Plaintiff Berry had attempted to make a purchase or request assistance, he certainly would have seen or been shown the pull-out counter, which has existed as shown since approximately _ 2003_____. Exhibit "B" shows a true and correct photo of the new counter we have put in so that there will never be any possibility of another misunderstanding like this, but did it justify a lawsuit?

c.  **Restroom**: The complaint indicates only that the restroom was "inaccessible" without providing any more detail. Well this statement has to be false because I have personally seen many wheelchair users visit and return to the restroom over the years without problem, incident or complaint (and these are people who would have told me if they felt something should be changed). I do think

---

[1] Note that I have diligently inquired of all who would have seen Plaintiff Berry if he had visited and no one recalls seeing him; this is unusual because this is a small business (i.e., less than 1,000 square feet of public area) and it would be very difficult for someone to come in without being seen. Because we typically jump to provide additional assistance for anyone who may be using a wheelchair, this

1    that if for any reason this Court does not dismiss this lawsuit, it should compel

2    plaintiff to provide the "short and plain" statement required by FRCP 8(a) so that

3    we can ascertain whatever it was that Plaintiff felt was unacceptable and

4    evaluate and/or fix it immediately. As I understand it, in the Southern District, a

5    defendant cannot propound discovery to learn more about the plaintiff's claims

6    until a settlement conference or ENE has taken place; thus, if we are asked to

7    pay money on the basis of the Plaintiff's complaint, I think it needs to be

8    sufficiently clear to allow us to ascertain what the Plaintiff thinks is wrong and

9    wants changed. If this claim is really motivated by a desire for access (and not

10   cash), I don't understand why Plaintiff would not include very specific demands

11   in the complaint; after all, how can we know if an injunction is necessary if we

12   are not given an opportunity to make requested changes first?

13

14   Exhibits "C" and "D" show the general configuration of the restroom as it would

15   probably have appeared on the date the Plaintiff allegedly visited; note the

16   already raised toilet seat, grab bars, wrapped sink pipes and lever-style faucet

17   handles. The room already had the coveted 60" clear turning radius which

18   many businesses have had to move walls to achieve. As I understand it,

19   Plaintiff's counsel Attorney Amy Vandeveld, has filed hundreds of these

20   ADA/access lawsuits and is seen by many as an expert; I therefore ask this

21   Court to scrutinize whether the complaint provides the detail she is clearly

22   capable of providing. If not, it should be dismissed, without prejudice to give us

is even more unlikely, though I'm told it is common in ADA/access lawsuits that the plaintiff does not personally enter premises.

an opportunity to demonstrate our commitment to making whatever access changes may be reasonably necessary for disabled access just for the asking (no lawsuit required).   In an abundance of caution, we have made some changes in the restroom, even though we cannot tell from the complaint whether they are or were necessary for the Plaintiff's particular disability; Exhibits "E", "F" and "G" are true and correct photos of the current condition of the restroom, and we will be installing a new wall-mount sink just to be safe.

d. **Parking and Signage**: Exhibit "H" shows how the disabled parking area might have looked in October 2007— though we have already reconfigured it, as shown in Exhibit "I", I think it is worth mentioning that a clearly demarcated disabled parking area of appropriate dimensions and signage did exist at the property at the time Plaintiff purportedly visited, so I am troubled by the reference in the complaint (at 4:26-7) to "lack of accessible parking space(s), as well as a lack of signage for such spaces."

3. I hope the photos and information above help explain why this motion is so important to me.  Every day my wheelchair-bound friends and I pass businesses which have done nothing to accommodate people with disabilities— they must have slept through the ADA.   While I am the first to acknowledge that we have made some changes since the lawsuit was filed, we did this because we are committed to welcoming every customer, regardless of disability, and if there's a better way to welcome them, we're up for it.  So while I find it disappointing that a business which had already made as

many disabled access accommodations as we had was sued without warning, I also ask this Court to either dismiss this case or issue orders which will cause the parties to quickly identify whether Plaintiff still contends that any other changes are necessary, without the considerable effort and expense Federal litigation can require.

4. I hereby confirm that I am available, and will make sure that someone else is available if I am not here, anytime Plaintiff would like to come by to review the facility. All I ask is that an appointment be made in advance so that I can ensure appropriate staffing; this will be a polite "no questions asked, no accusations made" visit and the Plaintiff, with or without his attorney or expert will be free to roam about the public areas of the facility, taking photographs and measurements as they see fit (we will do the same before and after). While I believe that any arguable basis for this Court's continued involvement at the Property has been eliminated, I stand ready to consider, and almost certainly implement, any change the plaintiff may reasonably require at the property for his particular disability, and therefore urge this Court to dismiss this lawsuit without delay.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on _27__ March 2008, at San Marcos, California.

_____
Susan Wait

1

*-- BY FACSIMILE --*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28